**[Cite as *State v. Ridgeway*, 2021-Ohio-3450.]**

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

PHILIP B. RIDGEWAY

    Appellant

C.A. No.    29892

APPEAL FROM JUDGMENT
ENTERED IN THE
BARBERTON MUNICIPAL COURT
COUNTY OF SUMMIT, OHIO
CASE No.    CRB 1902793

DECISION AND JOURNAL ENTRY

Dated: September 30, 2021

SUTTON, Judge.

{¶1} Defendant-Appellant, Philip Ridgeway, appeals from the judgment of the Barberton Municipal Court finding him guilty of criminal mischief. For the following reasons, we reverse.

I.

{¶2} The genesis of this case involves a political disagreement between Mr. Ridgeway, a local business owner, and the Mayor of the City of Green, Gerard Neugebauer. At one point in time, Mr. Ridgeway's wife, Susan Ridgeway, was a council member in the City of Green and considered herself, along with her husband, to be political allies of Mayor Neugebauer. Mrs. Ridgeway testified that when Mayor Neugebauer first ran for mayor, the Ridgeways "did all sorts of things" in support of Mayor Neugebauer. Mrs. Ridgeway stated, "I wrote letters to the editor for him. I gave him money. I made a video for him for advertisement. I knocked on doors for him."

{¶3}   After Mayor Neugebauer became mayor, the relationship between the Ridgeways and Mayor Neugebauer "eventually became strained" over a construction project that the Ridgeways opposed, and Mayor Neugebauer supported.  When Mrs. Ridgeway sought another term on council, Mayor Neugebauer supported Mrs. Ridgeway's opponent, who ultimately defeated Mrs. Ridgeway in that election.

{¶4}   Following the fracture in their relationship, Mr. Ridgeway became an outspoken and vocal critic of Mayor Neugebauer.  Mr. Ridgeway placed an advertisement in the South Side Leader that criticized Mayor Neugebauer.  Mr. Ridgeway, the owner of a barbershop, displayed signs in his shop criticizing the mayor.  Mayor Neugebauer testified that, "[Mr. Ridgeway] would say the most terrible things about me on Facebook.  * * * [H]e constantly tried to make [customers who came to his barbershop] not support me."

{¶5}   This acrimonious relationship between Mayor Neugebauer and Mr. Ridgeway led to the events that formed the basis for the complaint in this case.  Sometime in October of 2019, Mr. Ridgeway acquired a magnetic bumper sticker that read "Re-Elect Mayor Neugebauer."  The State alleged that Mr. Ridgeway stole the bumper sticker; Mr. Ridgeway alleged it appeared on his vehicle one day when he was leaving his barbershop.  Mr. Ridgeway testified that when the bumper sticker appeared on his car, he assumed it was a prank by one of his friends or an individual who supported Mayor Neugebauer.  Mr. Ridgeway testified he immediately removed the magnetic bumper sticker from his car and then, at a later time, modified the bumper sticker to include the words "do not" in front "Re-Elect Mayor Neugebauer."  He also added the words "traitor," "liar," and "no way" to the bumper sticker before returning the magnet to his vehicle.

{¶6}   Mr. Ridgeway then took a picture of the bumper sticker on his vehicle and posted the picture to the social media website Facebook, with the caption "[v]ote this dishonest ass

clown out." Mayor Neugebauer acquired a screenshot of Mr. Ridgeway's Facebook posting and shared it with Sergeant Mike Walsh of the Summit County Sheriff's office. Sergeant Walsh relayed the information to Detective Larry Brown, who then spoke with Mayor Neugebauer. While Mayor Neugebauer testified he "didn't necessarily know [he] was the victim of a crime," Detective Brown testified that Mayor Neugebauer wanted to pursue criminal charges against Mr. Ridgeway. Detective Brown stated "without a victim I don't have a crime." Detective Brown sent Deputy Linda Urycki to Mr. Ridgeway's barbershop to investigate. Deputy Urycki discovered the bumper sticker on Mr. Ridgeway's car and issued a citation to Mr. Ridgeway for theft and criminal mischief.

{¶7} Mr. Ridgeway entered a plea of not guilty and the case proceeded to trial. At trial, the State produced the testimony of A.C., a supporter of Mayor Neugebauer's who testified he had a magnetic bumper sticker in support of Mayor Neugebauer that went missing sometime in October 2019. On the same day his bumper sticker went missing, A.C. went to Green City Hall to get another bumper sticker from Mayor Neugebauer, but neither A.C. nor Mayor Neugebauer could recall the exact date that A.C.'s bumper sticker went missing.

{¶8} Mayor Neugebauer testified he distributed "[p]robably about 12 to 16," bumper stickers, but also testified he may have passed out as many as 24 bumper stickers. He testified "it wasn't like we had lists for the car magnets," and he did not keep track of how many he passed out. Mayor Neugebauer further testified he "would just tell people [to] just throw them away" after the election because he "can't run for mayor again so [] it's an unneeded commodity."

{¶9} Mr. Ridgeway testified that when he first saw the bumper sticker in support of Mayor Neugebauer on his vehicle, he "had to laugh a little bit because I thought someone [] had

pranked me. And I was trying to think which of [] my hilarious friends, you know, would do that." Mr. Ridgeway testified that he also thought "perhaps, it was one of - - of Mayor Neugebauer's minions that tried to help [the Mayor] to try to make me look silly or something." Both Mrs. Ridgeway and a friend of Mr. Ridgeway's, G.H., testified that Mr. Ridgeway told them about someone putting the bumper sticker on his vehicle around the time the incident occurred.

{¶10}  The jury acquitted Mr. Ridgeway on the theft count and returned a verdict against Mr. Ridgeway on the criminal mischief count. The trial court sentenced Mr. Ridgeway to 60 days in jail, suspended, and five years of non-reporting probation. As a condition of his probation, the trial court also ordered Mr. Ridgeway to complete two terms of wearing a SCRAM X monitoring bracelet, each of 60 days, to coincide with the next two municipal court elections in 2021 and 2023.

{¶11}  Mr. Ridgeway timely appealed, asserting three assignments of error for our review. We have reordered certain assignments of error to facilitate our analysis.

II.

### ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED WHEN IT FOUND [MR. RIDGEWAY] GUILTY OF CRIMINAL MISCHIEF WHEN THE STATE FAILED TO PROVE AS A MATTER OF LAW THAT THE POLITICAL BUMPER STICKER WAS NOT HIS PROPERTY.**

{¶12}  In his second assignment of error, Mr. Ridgeway challenges the legal sufficiency of the trial court's judgment because the State of Ohio failed to establish the bumper sticker was not Mr. Ridgeway's property. For the following reasons, we agree.

## Standard of Review

{¶13} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009-Ohio-6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id.*

## R.C. 2909.07 Criminal Mischief

{¶14} "[A] person commits criminal mischief if he 'without privilege to do so, knowingly move[s], defaces, damages, destroys, or otherwise improperly tampers with the property of another." *State v. Fridley*, 9th Dist. Wayne No. 17AP0029, 2019-Ohio-3412, ¶ 8, citing R.C. 2909.07(A)(1)(a). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." *Id.*, citing R.C. 2901.22(B).

## "Property of Another"

{¶15} "The activity that constitutes criminal mischief under Revised Code Section 2909.07(A) involves a crime against property rather than a person." *Wysocki v. Oberlin Police Dept.*, 9th Dist. Lorain No. 13CA010437, 2014-Ohio-2869, ¶ 11. Proof of the offense requires the State to establish that the defendant damaged the property of another, i.e. someone else's

property.  *See State v. Garner*, 2d Dist. Darke No. 2017-CA-2, 2017-Ohio-7931, ¶ 15.  The State is not required to prove ownership of the property, but at a minimum must establish that an individual other than the defendant had a right of possession sufficient to justify protecting that individual's interest against criminal damaging.  *See State v. Russell*, 67 Ohio App.3d 81, 85 (4th Dist.1990) (concluding that "possession of a vehicle is a sufficient property interest to protect one against the crime of criminal mischief"); *State v. Maust*, 4 Ohio App.3d 187 (5th Dist.1982) (finding in criminal damaging case, it is not necessary for the State to prove ownership of the damaged motor vehicle); *State v. Garner*, 2d Dist. Darke No. 2017-CA-2, 2017-Ohio-7931, ¶ 15 (finding "it is well established that a right of possession is a sufficient property interest to protect an individual against criminal damaging").

{¶16}  In *State v. Cooke*, 5th Dist. Licking No. 15-CA-50, 2016-Ohio-3445, ¶ 22, the Fifth District Court of Appeals vacated a conviction for criminal mischief where the State failed to establish the ownership of a pair of curtains.  In that case, the appellant was located by police officers at her mother's residence.  The appellant "had removed a curtain from a common area of her mom's apartment building and was wearing it as a cape[.]"  Our sister Court held:

> In the instant case, there is no evidence that appellant in any way tampered with the property of another as defined by the statute.  Although the officer testified that she was wearing a cape made from a curtain taken from the common area of her mother's apartment building, there was no evidence presented as to the ownership of the curtain or whether she had permission to use the curtain.

{¶17}  Similar to *State v. Cooke*, *supra*, a review of the record in this case does not show that Mr. Ridgeway defaced the "property of another" as defined by the statute.  Deputy Linda Urycki testified when she arrived at Mr. Ridgeway's barbershop, the bumper sticker was on Mr. Ridgeway's car.  "As a general rule, proof of the possession of personal property is prima facie

evidence of title or is said to raise a presumption of ownership, which may be rebutted or overcome by evidence of ownership in another." *Miekle v. Leeberson*, 150 Ohio St. 528 (1948).

{¶18} The State argues in its brief that Mr. Ridgeway "fails to acknowledge the most important fact of the case: that the [bumper sticker] did not belong to [Mr.] Ridgeway." However, the bumper sticker was in Mr. Ridgeway's possession. It was the State that was required to overcome Mr. Ridgeway's presumption of ownership by establishing the bumper sticker was the property of someone other than Mr. Ridgeway. Mayor Neugebauer's testimony, however, established that when he passed out the magnetic bumper stickers, he relinquished ownership of them and essentially abandoned them as his property. He had no expectation the bumper stickers would be returned to him, and he did not keep track of the number he passed out, or to whom he gave the bumper stickers. The State presented testimony that A.C. had a bumper sticker go missing the same month the bumper sticker appeared on Mr. Ridgeway's car. However, according to their testimony, neither A.C. nor Mayor Neugebauer could recall the exact date A.C.'s bumper sticker went missing. The State failed to produce evidence to establish the bumper sticker in Mr. Ridgeway's possession belonged to A.C. or anyone else.

{¶19} Construing all the evidence in the record in a light most favorable to the State, we cannot conclude the State established beyond a reasonable doubt that the bumper sticker on Mr. Ridgeway's car belonged to anyone other than Mr. Ridgeway. Therefore, the jury's verdict, finding Mr. Ridgeway guilty of criminal mischief, was based on insufficient evidence.

{¶20} Mr. Ridgeway's second assignment of error is sustained.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT ERRED WHEN IT FAILED TO REALIZE THAT [MR. RIDGEWAY'S] ALTERATIONS TO THE BUMPER STICKER ON HIS CAR WAS PROTECTED FREE SPEECH UNDER THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION.**

{¶21} In his first assignment of error, Mr. Ridgeway raises an argument regarding the trial court's failure to instruct the jury regarding his constitutionally protected speech. However, in light of this Court's resolution of Mr. Ridgeway's second assignment of error, we conclude that this argument is moot. *See* App.R. 12(A)(1)(c).

### ASSIGNMENT OF ERROR III

**THE TRIAL COURT ERRED WHEN IT PERMITTED IMPROPER CHARACTER EVIDENCE UNDER [EVID.R.] 403, 404, AND 609.**

{¶22} In his third assignment of error, Mr. Ridgeway argues the trial court violated the Rules of Evidence when it erroneously admitted improper character evidence. In light of this Court's resolution of Mr. Ridgeway's second assignment of error, we conclude that this argument is moot. *See* App.R. 12(A)(1)(c).

III.

{¶23} Based upon the foregoing, the judgment of the Barberton Municipal Court is reversed and the matter is remanded for the trial court to enter an order vacating the judgment of conviction.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Barberton Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

BETTY SUTTON
FOR THE COURT

TEODOSIO, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

ELI R. HELLER and JOSEPH A. KACYON, Attorneys at Law, for Appellant.

MICHELLE BANBURY, Assistant Prosecuting Attorney, for Appellee.